Rose and Egan Jr., JJ.,
concur.
Peters, P.J. (concurring). Seventy-two acres. Eighty-five stores. Three sit-down restaurants. A 12-screen cinema. One security guard. These facts compel me to write separately to address the alarming state of the security measures at defendant Hudson Valley Mall on the day of the shooting. Our conclusion that defendant Robert Bonelli Jr.’s specific criminal conduct was not foreseeable so as to ground legal liability does not mean that the security measures on Valentine’s Day Eve were adequate for the foreseeable criminal conduct that the Mall experiences, or that security measures that would have been adequate for the circumstances and conditions of the Mall might not have minimized the criminal event that took place on Sunday, February 13, 2005. Rather, security at the Mall on the day of the shooting was frighteningly inadequate.
Defendant Pyramid Management Group’s own internal 2004 Security/Safety Audit of the Mall provides stark evidence of such inadequacy. As the audit summarizes, “Hudson Valley Mall is a 765,000 square foot facility comprised of approximately 80 specialty stores, 5 anchor stores, 3 sit down restaurants, and a 12 screen cinema” on 72 acres. This report observed that “the *1208 area does experience criminal activity which requires [the] Mall to maintain adequate security staffing levels.” The policy goal for security at the Mall was “to create an atmosphere of security omnipresence” both within and outside the facility. As we observed when we affirmed his criminal conviction, Bonelli “entered a crowded Ulster County shopping mall with a semiautomatic assault rifle and engaged in a nine-minute shooting rampage” (People v Bonelli, 41 AD3d 972, 973 [2007], lv denied 9 NY3d 921 [2007]), a rampage that finally ended when he ran out of ammunition and surrendered himself to a maintenance worker at the Mall. Prior to and during the shooting, there was no security presence in the vicinity since the Mall had a single security guard on duty who was tasked with securing both the inside and outside of the premises.
The Security/Safety Audit also recommended the installation of a closed-circuit television system because, as the report noted, “The existence of this system alone can serve as a great criminal deterrent.” In the years prior to the shooting incident, the Mali’s security director requested a closed-circuit television system for the Mall on multiple occasions. Both the recommendation of the Security/Safety Audit and the multiple requests from the Mali’s security director went unheeded. Moreover, requests for additional security officers and increased security personnel staffing were similarly rejected.
The record details shockingly inadequate security measures at the Mall. The Mall defendants should not conclude that the dismissal of this action reflects approval of their security protocol.
Ordered that the order is affirmed, with costs.